UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff/Respondent,** | ) | **Criminal Action No.** |
| | ) | **6:17-cr-00020-GFVT-MAS-1** |
| **v.** | ) | **and** |
| | ) | **Civil Action No.** |
| **DONNIE GARLAND,** | ) | **6:20-cv-00231-GFVT-MAS** |
| | ) | |
| **Defendant/Movant.** | ) | |
| | ) | |

## REPORT & RECOMMENDATION

This matter is before the undersigned on referral for preparation of a Report and Recommendation concerning Defendant/Movant Donnie Garland's ("Garland") Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. [DE 68].[1]

In his petition, Garland asserts four grounds for relief: two related ineffective assistance of counsel claims premised on Garland's belief that certain trial evidence should have been suppressed, an ineffective assistance of counsel claim related to counsel's failure to call defense witnesses and to permit Defendant to testify, and an actual innocence claim based on *Rehaif v. United States*, 139 S. Ct. 2191 (2019). [*Id.*]. Garland also filed a later document styled as a motion for compassionate release [DE 75] and denied by Judge Van Tatenhove as such [DE 79]. There, in part, Defendant argues in further support of his § 2255 suppression claims, additionally alleges that the trial court erred by failing to order a competency examination, and reasserts that there was insufficient evidence to support his convictions.

---

[1] Record citations reference the underlying criminal docket.

To the extent Garland's purported compassionate release motion, in substance, attempts to supplement or add § 2255 claims, Garland has not properly sought leave to do so. The claims are not properly asserted. Nonetheless, given Defendant's *pro se* status and to ensure a complete record for District Judge review, the Court considers and also recommends denial of all claims as supplemented and/or raised in DE 68 and DE 75 on their merits. [*See* DE 79 at Page ID # 813]. The Court perceives an evidentiary hearing as unnecessary to resolve Garland's claims, as discussed in conjunction with each specific claim below.

Based on review of the full record, the Court therefore recommends denial of Garland's § 2255 motion for the reasons here discussed. The Court further recommends, for the reasons stated, that the District Judge not issue a Certificate of Appealability as to any claim or issue.

## I.    RELEVANT BACKGROUND

On April 13, 2017, Garland appeared before the Court on an Indictment alleging that he distributed an unspecified quantity of a methamphetamine mixture on five separate occasions in violation of 21 U.S.C. § 841(a)(1) (Counts 1 through 5), possessed a firearm in furtherance of the Count 5 drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 6), possessed with intent to distribute 50 or more grams of a methamphetamine mixture in violation of § 841(a)(1) (Count 7), and possessed several firearms after being convicted of a felony in violation of 18 U.S.C. § 922(g) (Count 8). [DE 1, 11]. Garland proceeded to trial on August 29, 2017, and the jury found him guilty on all counts listed in the Indictment the following day. [DE35, 38, 39]. Judge Van Tatenhove sentenced Garland on June 12, 2018. [DE 48]. Garland received a total sentence of 360 months' imprisonment, with eight years of supervised release to follow. [DE 49].

Garland timely filed a direct appeal, primarily challenging the admission of certain evidence at trial. [DE 50]. The Sixth Circuit affirmed all of Garland's convictions on September

4, 2019. [DE 65]. Garland then timely filed the instant motion. [DE 68].[2] Garland affirmatively waived his attorney-client privilege as to the specific ineffective assistance claims raised in this § 2255 motion. [DE 72]. The Court issued a briefing schedule [DE 71], and the Government responded to the merits of Garland's motion [DE 73]. Though permitted to do so, Garland did not reply. He did, however, file a hybrid compassionate release motion and § 2255 motion supplement during the § 2255 motion's pendency. Judge Van Tatenhove has since resolved that motion insofar as it sought compassionate release.

Each of Garland's § 2255 claims, as supplemented, is thus ripe for review and disposition.

## II.    LEGAL FRAMEWORK

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Any

---

[2] The filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002) (per curiam). Garland's judgment became final on December 3, 2019, when the time period for seeking a writ of certiorari expired. *See* Sup. Ct. R. 13(3) (providing that "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate"). Garland's November 12, 2020 filing thus falls within the one-year limitation period applicable to § 2255 motions. *See* 28 U.S.C. § 2255(f)(1).

non-constitutional error must constitute a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). A § 2255 movant typically must prove any factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*).

Ineffective assistance of counsel ("IAC") in violation of the Sixth Amendment is the salient variety of constitutional error alleged here. The standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), governs IAC claims. To prevail, a movant must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the movant. *Id.* at 687. To establish deficient performance, a movant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. "Judicial scrutiny of counsel's performance must be highly deferential[,]" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

A prejudice showing requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id.* at 694–95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id.* at 695. To obtain relief, a movant must satisfy both prongs of the *Strickland* analysis, and courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

A collaterally reviewing court must thoroughly review the record to determine whether an evidentiary hearing on a § 2255 motion is warranted. *See* Rule 8(a) of the Rules Governing Section 2255 Proceedings. An evidentiary hearing is warranted if needed "to resolve any factual questions

4

not conclusively resolved by the record." *Howard v. United States*, 485 F. App'x 125, 128 (6th Cir. 2012); 28 U.S.C. § 2255(b). "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims," unless "the record conclusively shows that the petitioner is entitled to no relief." *Id.* (quotation marks and citations omitted). However, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). In other words, arguments contradicted by the facts of record, conclusory legal arguments without support, or "bare assertions of a fact dispute" as to some raised issue do not alone warrant a hearing. *Howard*, 485 F. App'x at 129.

### III.    ANALYSIS

Garland asserts four primary grounds for relief in his petition, as noted. He further (improperly) adds support for those claims and briefly raises an additional IAC-suppression theory and two supplemental claims in his compassionate-release-styled supplement. Though the latter claims are procedurally improper and should be rejected on that basis, the Court nonetheless also recommends rejection of each asserted ground for relief on its merits for the reasons stated below.

### A.    GROUNDS 1 AND 2 AND SUPPLEMENTAL GROUNDS 1 AND 3 (IAC - SUPPRESSION)

Garland contends that trial counsel, Hon. David S. Hoskins, was ineffective for failing to move to suppress evidence obtained during a search of Defendant's mother's property. He claims that counsel's failure in this regard amounted to a lack of adversarial testing of the prosecution's case (Ground 1) and allowed the United States to perpetrate fraud on the Court and to commit prosecutorial misconduct when it introduced that evidence at trial (Ground 2). [DE 68-1]. Both purported complaints are ultimately filtered through the IAC lens and hinge on the same *Strickland* analysis.

The § 2255 motion also briefly, without development, alludes to a perceived counsel error concerning confidential informant ("CI") evidence admitted at trial.  Garland further describes that claim in the DE 75 supplemental motion, framed as Grounds/Claims 1 and 3.  Liberally construing the filing, he argues that counsel was ineffective for failing to suppress the CI's audio and video evidence capturing controlled narcotics purchases inside of Garland's home, which he believes were recorded in violation of Title III and of the Fourth Amendment.

The Court analyzes each suppression theory within the IAC framework in turn.

### 1.    Seizure on Defendant's Mother's Property

Garland's primary argument centers on a warrantless search and seizure at his mother's property, where drug trafficking evidence was ultimately uncovered in a shed-type outbuilding (hereinafter "shed" for ease of reference) on the grounds.  He further challenges a subsequent search warrant, obtained in part because of that evidence, as fruit of the poisonous tree.  Garland contends that his trial counsel was constitutionally ineffective for failing to move to suppress the evidence found in the shed and any derivative evidence as obtained in violation of the Fourth Amendment.

The trial record, Garland's motion, and the Government's response generally agree on the relevant facts surrounding the search but differ on their legal import.  Thus, no hearing is required to further clarify or develop this claim.[3]  Before the Court turns to the analysis, the facts of the search are as follows.

---

[3] Garland's conclusory statements that are contradicted by the sworn witness statements at trial, *e.g.*, claiming that there was *nothing* amiss at the property upon law enforcement arriving and that *no* circumstances supported the threat indicated in the 911 call, do not warrant a hearing.  Nor does Garland's and counsel's differing recollection as to whether counsel stated that he would file a suppression motion, as it does not materially bear whether counsel's failure to file a suppression motion on these facts fell below an objective standard of competence.

The challenged search in this case occurred on December 24, 2016, after law enforcement received an anonymous call stating that someone had stolen an ATV, that the theft suspect was tied up and being held hostage by the victims, and that someone was firing automatic weapons on the property belonging to Garland's mother and where Garland lived. [DE 60 at Page ID # 415-20]. Responding officers, Knox County Sheriff's Deputies Hudson and Frith, testified that they arrived and saw a chaotic scene with many people walking about different buildings and campers on the property. While contacting the non-resident occupants and asking basic identity questions, officers encountered Garland washing a visibly dirty ATV. Garland admitted that there had been weapons fired, but he claimed that it had come from a neighboring property. Deputy Hudson sought consent to search all buildings on the property from the individual reasonably appearing to be Garland's live-in girlfriend, and she agreed as to all but one building, which she claimed was locked and that she lacked access to. [*See also id.* at Page ID # 468].

However, Garland's girlfriend's statements concerning the "locked" shed were suspiciously inconsistent with other circumstances as observed by the officers. Deputy Hudson testified that, upon arrival at the property, he had observed Garland's girlfriend exiting the shed in a rush, shouting "police, police" to another individual, and closing the door to the shed intentionally behind her. [*Id.* at Page ID # 417]. Later, however, she claimed that she did not use the building, that it belonged to a neighbor, and that authorities could wait for "a few minutes" if they wanted the neighbor to return and unlock it. [*Id.* at Page ID # 468]. Despite officers asking Garland and his girlfriend to remain (consensually) at the property to assist in finding the neighbor and accessing the supposedly locked shed, she and Garland realized they had an urgent "appointment" and immediately departed from the property.

7

Deputy Frith testified that he perceived the conduct and circumstances to be suspicious and strange because Garland and his girlfriend were aware of the hostage report made in the call. [*Id.*]. At this point, alone on the property, both deputies testified under oath that they independently heard sounds arising from the shed. [*Id.*]. They further realized that the door was in fact unlocked, contrary to Garland's girlfriend's statements. Based on these circumstances, the officers pushed the shed door open and, in plain view, located evidence of drug trafficking that was ultimately used against Garland in this prosecution. No hostages were located, though the officers confirmed that they were looking for such when opening the shed. Authorities subsequently sought a search warrant based on the items located in plain view and later uncovered additional weapons and evidence against Garland in a later search.

With these facts in mind, the Court turns to Garland's argument. In short, Garland's claim of ineffective assistance is undermined by the trial record, which confirms that a reasonably competent attorney could have determined that filing a motion to suppress the challenged evidence would have been futile because the undisputed facts give rise to a likely applicable warrant exception. Accordingly, Garland cannot show that his counsel's decision not to file a suppression motion under these circumstances fell below an objective standard of reasonableness, and he cannot overcome the strong presumption that counsel's decision was within the wide range of constitutionally effective assistance.

Ineffective assistance "can flow from a failure to file a plainly meritorious motion to suppress." *Hendrix v. Palmer*, 893 F.3d 906, 922 (6th Cir. 2018). But such an error "does not constitute *per se* ineffective assistance of counsel . . . For such a failure to constitute deficient performance, the meritorious nature of the motion must be so plain that no competent attorney would think a motion to suppress would have failed." *Id.* (citations and quotation marks omitted).

8

*See also Navarro v. United States*, 381 F. Supp. 3d 924, 929 (M.D. Tenn. 2019); *Premo v. Moore*, 562 U.S. 115 (2011) (framing "the relevant question under *Strickland*" as an inquiry into whether "no competent attorney would think a motion to suppress would have failed"); *Young v. Tibbals*, No. 1:11CV0386, 2012 WL 3238354, at *13 (N.D. Ohio Apr. 25, 2012), *report and recommendation adopted*, No. 1:11-CV-0386, 2012 WL 3235988 (N.D. Ohio Aug. 7, 2012) ("[W]e presume that defense counsel was effective if defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act."). "[T]he defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Navarro*, 381 F. Supp. 3d at 929 (quoting *Ray v. United States*, 721 F.3d 758, 763 (6th Cir. 2013)).

"What this means for present purposes is that even '[t]hough free-standing Fourth Amendment claims cannot be raised in collateral proceedings . . ., the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue.'" *Id.* (quoting *Ray*, 721 F.3d at 762–63). The Government here contends that the merits of the possible suppression motion in this instance were not so plain that no competent counsel could have thought such a motion would fail. The Court agrees that, though the facts do give rise to a possible suppression issue, a reasonably competent attorney could have thought that such a motion would fail based on the existence of probable cause and exigent circumstances to search the shed.[4]

---

[4] Two other possible issues with such a motion arise in the record but demand less comprehensive analysis. First, the Government briefly mentions—and Garland refutes—that his girlfriend had apparent authority to consent to a search of the shed. The Court is not persuaded from the record that "the facts available to the officer[s] at the moment warrant[ed] a man of reasonable caution in the belief that the consenting party had authority over the premises[.]"

Though searches and seizures typically require a warrant to comply with the Fourth Amendment, an exception arises where there is probable case as well as exigent circumstances that justify the warrantless intrusion. *See United States v. Johnson*, 9 F.3d 506, 509 (6th Cir. 1993). "[W]here the Government relies upon the alleged presence of exigent or criminally suspicious circumstances, [t]he establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Fisher*, 145 F. Supp. 2d 853, 858 (E.D. Mich. 2001) (quoting *United States v. Ogbuh*, 982 F.2d 1000, 1002 (6th Cir. 1993)) (quotation marks omitted). The Court must evaluate the totality of the circumstances. *Id.* "In determining whether exigent circumstances were present in a particular case, the inquiry is whether the 'facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed.'" *McCray v. Pittman*, No. 09-13868, 2010 WL 3123282, at *6 (E.D. Mich. Aug. 9, 2010) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002)). As the Supreme Court has stated,

> One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.

---

*United States v. Clay*, 630 F. App'x 377, 383 (6th Cir. 2015). Nor is the Court persuaded that Garland's girlfriend did not except that particular shed, which she disclaimed ownership of and access to (whether or not that was true), from any blanket consent to a search of the property as a whole. Additionally, the Government notes in passing a possible standing issue, precluding Garland's ability to assert a reasonable expectation of privacy in the shed, which, notwithstanding his constructive possession of the items there, was accessible to multiple people and essentially a shared space. The absence of a reasonable expectation of privacy in that location would have vitiated any Fourth Amendment interest and possible suppression claim. However, because the Court finds that a reasonably competent attorney could have determined that the search was justified by probable cause and the exigent circumstances exception—the United States' primary developed argument in response to Garland's claim—it recommends rejection of Garland's *Strickland* claim on that basis.

*Brigham City v. Stuart*, 547 U.S. 398, 403-04 (2006).

The facts at hand may give rise to questions about probable cause and/or exigent circumstances, the Court is not convinced that the Fourth Amendment issue was so plainly meritorious in this instance that every competent attorney would have filed a suppression motion. A reasonably competent attorney could have determined that there was a fair probability that criminal activity immediately endangering the safety of another person was occurring in the shed and that a motion to suppress the evidence found there in plain view was thus likely to lose.

Though not entirely analogous, a roughly similar suppression motion was recently rejected by the Western District of Kentucky in *United States v. Windham*, No. 1:20-CR-00011-GNS, 2022 WL 422166, at *1 (W.D. Ky. Feb. 11, 2022). There, an anonymous call reported shots fired in or near a duplex and sounds of an argument. When responding officers announced their presence, two occupants exited the residence and denied any shots within the apartment, though they were evasive, one said that shots may have been fired elsewhere in the backyard, and a neighboring unit confirmed the sound of shots. The court found that the officers reasonably believed that there could be a victim in need of immediate aid inside of the duplex, despite the occupants' statements to the contrary, given the inconsistencies in their statements and contradictions with other observations. *See id.* at *3.

Here, Garland's attorney could have filed a suppression motion, but a competent attorney in this case could likewise have concluded that a court would have denied such a motion as unmeritorious. The record contains sufficient facts from which a reasonably competent attorney could conclude that the information available to Deputies Frith and Hudson would have warranted a reasonable officer in the belief that a person was injured and in need of aid inside of the shed. Though little is known about the initial anonymous call, it included the specific motive for the

alleged crime (taking a person hostage and firing weapons in the process) as retaliation for theft of an ATV on a specific property.  Upon responding to that property, authorities noticed a chaotic scene with numerous people, and eventually located a resident of the property washing an ATV. That person, Garland, admitted that there had been gunshots but advised that they occurred at a neighboring property.  Additionally, the officers had reasonable grounds to disbelieve Garland's girlfriend's statements about access to the shed as they had observed her essentially fleeing from the shed upon their arrival, alerting others to the presence of police. Then, they learned that Garland's girlfriend's statement concerning the locked status of the shed was untruthful.

All of these evasive and dishonest statements from Garland's girlfriend surrounding the shed, together with her flight therefrom, heightened suspicion that criminal activity was afoot inside. Such suspicion was further objectively heightened when Garland and his girlfriend elected to suddenly depart from the property with an unpersuasive, seemingly untrue explanation, just as officers sought entry to the shed.  Combined with the corroborated 911 call statements concerning an ATV on the property, Garland's interaction with the same upon officers' arrival, and Garland's own admission that gunshots had been fired near the property as the caller had stated, the circumstances gave rise to a fair probability that criminal activity was occurring.  Accordingly, at the point that the officers each independently heard sounds coming from the shed, as they testified under oath that they did, there was a reasonable basis to believe that a person needed aid inside of the shed based on the totality of the circumstances.

Based on these facts as confirmed by and undisputed in the record, Garland cannot show that no competent attorney would have decided against filing a motion to suppress the evidence found in the shed.  The *Strickland* showing, "although by no means insurmountable, is highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).  "More importantly, it differs

significantly from the elements of proof applicable to a straightforward Fourth Amendment claim. Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim . . ., a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief." *Id.* So here. Given the questionable merits of the Fourth Amendment issue Garland now raises, he cannot clear the high bar of showing that his counsel's representation fell below an objective standard of reasonableness, affording counsel the wide deference warranted, because of his failure to bring such a motion.

Accordingly, the Court recommends that the District Judge deny this claim.[5]

## 2.    Confidential Informant Recordings

While fully acknowledging that Garland improperly attempted to add this claim, the Court addresses it briefly for completeness purposes. Garland appears to claim that the video and audio recorded by a CI that captured Garland should have been suppressed as obtained in violation of Title III. [*See, e.g.*, DE 75 at Page ID # 766]. However, authorities did not directly intercept these communications, they were recorded by one of the parties to the conversation—the CI. And it is "conclusively established that the Fourth Amendment is not violated where, during an investigation, a Government agent consents to record his private conversation with others who are suspect without revealing his true identity or purpose." *United States v. Kline*, 366 F. Supp. 994,

---

[5] As the question of prejudice here in part turns on the likely merits (or lack thereof) of the asserted Fourth Amendment issue, the Court need not duplicate its analysis in that regard. To the extent a showing of meritoriousness is in part required to demonstrate prejudice, it is absent for the reasons discussed. However, to the extent the prejudice prong also rests on the question of whether the challenged evidence—if actually suppressed—would have led to a different outcome at trial, Garland could likely establish such. The Government does not dispute that the evidence found in the shed forms the basis for at least some of Garland's convictions. However, because Garland fails the first *Strickland* prong, he cannot succeed on this claim. Additionally, given that a reasonable attorney could have found suppression to be unavailable and thus declined to file a motion, Garland also cannot show that counsel was ineffective for failing to object to purported prosecutorial fraud in connection with presentation of this evidence at trial.

996 (D.D.C. 1973) (collecting cases).  Accordingly, it is clear that an objectively reasonable and competent attorney could have determined that filing a motion to suppress the recording evidence would have failed, and Garland cannot demonstrate deficient performance in this regard.

Nor would any hearing be needed on this claim because Garland simply misapplies the law to the undisputed facts concerning the CI's recording of these conversations and those recordings' provision to law enforcement.  No valid suppression issue existed, and Garland's attorney could not be found ineffective for declining to file such an unmeritorious motion, regardless of any possible prejudice showing.  The Court therefore recommends that, to the extent Garland presents this claim, it be rejected both procedurally and on its merits.

**B.      GROUND 3 (IAC - TRIAL TESTIMONY)**

Garland's third Ground in his original petition also alleges IAC and has two facets.  Garland asserts that trial counsel prevented him from testifying and that counsel also failed to call other defense witnesses on his behalf.  The Court recommends denial of both claims.

As to the first part of his claim, because Garland cannot "show that his right to testify was impaired, he cannot show deficient performance by counsel" in preventing him from taking the stand. *Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009).  He thus fails the first *Strickland* prong.  As a general matter, "[t]he decision whether to call a defendant as a witness falls within the purview of trial strategy." *Wiley v. Hurley*, No. 2:05-CV-698, 2006 WL 1132960, at *5 (S.D. Ohio Apr. 25, 2006).  "Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000).  "This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is strongly presumed to have rendered adequate assistance in carrying out the general duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important

14

decisions and to keep the defendant informed of important developments[.]"  *Id.* (footnote and quotation marks omitted) (quoting *Strickland,* 466 U.S. at 688–90).

Accordingly, where the defendant knew of his right to testify and did not indicate disagreement with counsel or alert the trial court to his desire to testify, his waiver of the right is presumed, and courts are not required to conduct *sua sponte* waiver inquiries in such instance.  *Id.* As the Sixth Circuit has noted,

> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. At base, a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.

*Hodge*, 579 F.3d at 640.

Garland's version of events implicitly concedes that he was aware of his right to testify, consistent with defense counsel's affidavit as submitted by the United States, leaving no factual dispute.  Defendant asserts that, during trial, he told his counsel that he wanted to testify, and counsel advised him against it because he believed that Defendant intended to perjure himself with his version of events in the case and could subject himself to greater sentencing liability.  [*See* DE 73-1 (Affidavit)].  Garland claims that he realized he had relied upon that advice in error and that he should have insisted upon testifying when he was convicted of the offenses at the trial's conclusion.  Critically, though, Garland does not assert that he did not know he could testify or that he was threatened or prevented from testifying.  Rather, he argues that he believes he followed poor advice in deciding not to do so at counsel's urging.  Moreover, the trial record makes clear that Garland at no point alerted the trial court to any desire to testify or to any disagreement between him and counsel over the matter.

15

Accordingly, the record confirms that Garland's decision not to testify was in accordance with advice based upon a tactical decision of counsel, and Garland cannot show that his decision in that regard was the result of deficient performance on counsel's part. Knowing waiver of the right to testify in accordance with counsel's advice can be presumed from the record, entirely consistent with Garland's own proffered factual narrative. Garland thus cannot establish deficient performance, and there are no fact issues requiring evidentiary development at further hearing.

The Court also notes that Garland has not shown prejudice in connection with his failure to testify, as he has not alleged the substance of his missing testimony or demonstrated how it would have altered the outcome in a favorable manner at trial. He does not provide the proposed content of his testimony or explain how it relates to the other evidence presented at trial. Nor has he presented any evidence or argument sufficient to raise a fact dispute on this point. Consequently, Defendant's IAC claim related to his own failure to testify also fails on the second *Strickland* prong, as there is no indication that Garland's unknown testimony would have changed the course of the trial had he given it. *See Wiley*, 2006 WL 1132960, at *6 ("Defendant is asking this court to speculate on what he would have said and how that would have affected the jury's verdict. This type of vague speculation is insufficient to establish ineffective assistance of counsel . . . [D]efendant has failed to provide sufficient evidence that his trial counsel's decision not to call him to testify was anything more than a strategic trial decision made for defendant's benefit.").

The second part of Garland's Ground 3 claim turns on counsel's purported failure to call other defensive witnesses. However, Garland fails to identify any such witnesses or summarize their proposed testimony, or to explain how these witnesses would have impacted the result at trial. This conclusory second facet of Garland's claim therefore also fails both *Strickland* prongs and merits no relief. *See, e.g.*, *Blake v. United States*, No. 20-6370, 2021 WL 6098423, at *4 (6th Cir.

June 17, 2021) ("Blake's contention that Stokes should have called witnesses is conclusory because Blake fails to identify any witnesses or describe any proposed testimony that would have been favorable."). The conclusory nature of the claim likewise raises no factual dispute and warrants no hearing, as defense counsel agrees that Garland did not actually identify any favorable witnesses during pretrial investigation.

Defendant simply generally cites his inability to call favorable witnesses without even speculating as to whom he may have called or what those people would have said.[6] [DE 68-1 at Page ID # 725-27]. This is clearly insufficient to demonstrate that counsel performed below an objective standard of reasonable competence in conducting his pretrial investigation or in preparing for trial; Garland thus has not shown deficient performance. Nor has Garland demonstrated that such unspecified testimony would have changed the verdict at trial, precluding him from establishing that he was prejudiced by counsel's alleged failure to call witnesses. *See Pillette v. Berghuis*, 408 F. App'x 873, 887–88 (6th Cir. 2010) ("Speculation cannot suffice to establish the requisite prejudice . . . Lacking evidence that calling [the witness] actually would have produced the favorable testimony he hoped for, Pillette cannot establish either unreasonable performance or prejudice, so his claim fails.").

For these reasons, the record conclusively confirms that Garland cannot succeed on the merits of these Ground 3 claims, and the Court recommends that the District Judge deny them.

## C.   GROUND 4 (ACTUAL INNOCENCE – *REHAIF* )

Garland maintains that he is actually innocent of the § 922(g) offense for which he was convicted because the Government did not prove that he knew of his prohibited status in

---

[6] To the extent Defendant also attempts to complain that he was prevented from cross-examining witnesses himself, he had not elected to proceed *pro se* at trial, and he does not allege any particular deficiencies with counsel's cross-examination.

accordance with *Rehaif*. Though the jury's guilt finding occurred much sooner and Garland's Judgment in this case was entered in June 2018, his conviction was not finalized for collateral review purposes until his appeal was resolved in September 2019 and his time for seeking a writ of certiorari expired in December 2019. [DE 56 (Appeal decided in September 2019)]; S. Ct. R. 13. *Rehaif* was decided during the late pendency of Garland's direct appeal, in June 2019. 139 S. Ct. 2191.

*Rehaif* ordinarily is not retroactively applicable to cases in the collateral review posture. *See, e.g.*, *Butcher v. Williams*, No. 5:20CV541, 2020 WL 8642100, at *2 (N.D. Ohio Sept. 17, 2020) (collecting numerous cases). Garland did not raise the case or this issue of his knowledge on direct appeal, despite time to do so. To justify his procedural default in failing to raise the case on direct review or to preserve this issue, Garland must show either cause and prejudice for the default or that he is actually innocent of the crimes charged (as he ultimately seeks to do here per *Rehaif*). *See Bousley v. United States*, 523 U.S. 614, 615 (1998).

Garland does not even attempt to argue cause or prejudice, and he does not explain his failure to raise *Rehaif* on direct appeal.[7] He does not cite ineffectiveness of appellate counsel or argue that any oversight occurred. Regardless, Garland's *Rehaif* claim fails because he cannot establish that he was prejudiced by the omission of a knowledge element at trial, or, relatedly, that he is actually innocent of the newly recognized statutory knowledge element of the § 922(g) offense. "To establish actual innocence, [a] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*,

---

[7] Nor could Garland show that a *Rehaif* argument was unavailable to be raised or preserved at the trial stage, though he does not attempt to so argue here. *See Joseph*, 2021 WL 2936056, at *3 (E.D. Pa. July 12, 2021) (finding that a *Rehaif* argument was "not a novel one" and was "reasonably available to [ ] counsel" because "the issue ultimately decided in *Rehaif* had been litigated in lower courts since at least 1991").

523 U.S. at 623 (citing *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995) (quotation marks omitted)). Garland simply conclusorily states that he "lacked any knowledge as to his status." [DE 68-1 at Page ID # 727]. However, the evidence of record firmly belies this inherently incredible claim, such that it would be impossible to find that no reasonable juror could have convicted Garland on the knowledge element of the offense based on the existing facts. The record shows that Garland had knowledge of his felony status. There is thus no need for an evidentiary hearing for further development.

At trial, Garland stipulated that prior to the events in question in this case, he had been convicted by a crime punishable by imprisonment for a term of more than one year. [DE 32-1]. "Although the stipulation of a prior felony does not automatically establish knowledge of felony status, it is strongly suggestive of it." *United States v. Ward*, 957 F.3d 691, 695 (6th Cir. 2020) (quoting *United States v. Conley*, 802 F. App'x 919, 923, (6th Cir. Feb. 5, 2020). Garland alleges no facts here that cast doubt on this evidence or that would support his statement that he actually was unaware that he had a prior felony. He also "offers no reason that, if the government had been required to prove his knowledge of his felony status, it would have been unable to do so." *Id.* The Presentence Investigation Report confirms that Garland had several prior felony offenses. [DE 54]. In particular, in 2009, Defendant pleaded guilty to trafficking in a controlled substance and was sentenced to a term of imprisonment of ten years, for which it appears that he actually served at least two years. [*Id.* at Page ID # 208]. Moreover, an additional count of Persistent Felony Offender was dismissed at sentencing (ostensibly as a part of Defendant's plea proceedings). [*Id.*].

This information would substantially indicate that Defendant was aware, by 2016, that he had previously been convicted of a felony offense punishable by more than one year. It is implausible that Defendant would not have known that he had spent nearly two years in prison

between 2010 and 2012. *See, e.g.*, *United States v. Joseph*, No. CR 10-664-KSM, 2021 WL 2936056, at *4 (E.D. Pa. July 12, 2021); *United States v. Roberts*, No. 15-387, 2020 WL 6700918, at *4 (E.D. Pa. Nov. 13, 2020) ("Given Roberts' prior felony convictions, and given the fact that he had spent well over a year in prison prior to his June 2015 arrest, it is implausible that Roberts was unaware at the time of his offense that he had been convicted of a crime punishable by imprisonment of over a year, or that the Government would have been unable to prove this fact beyond a reasonable doubt."); *United States v. Saunders*, No. 10-442, 2020 WL 5569785, at *5 (E.D. Pa. Sept. 17, 2020) ("Saunders cannot prove his actual innocence. No reasonable juror would ever find that Saunders did not know that he had spent over two years in prison before he possessed a firearm on April 29, 2020.").

For these reasons, Garland cannot show that no reasonable juror would have found the knowledge element unsatisfied, and he cannot show that he is actually innocent of the § 922(g) offense under *Rehaif* or otherwise. The Court thus recommends that the District Judge deny this claim.

## D.    SUPPLEMENTAL CLAIMS [DE 75]

Lastly, in his purported compassionate release motion, Garland perfunctorily asserts two additional claims of trial error, without attempting to seek leave to amend his petition or to tie the arguments into cognizable § 2255 claims. To the extent either could be considered to supplement his petition, neither has any merit in current form and on this record, and the Court would recommend that the District Judge reject these arguments for relief.

First, Garland asserts that the trial court or his attorney should have prompted a competency examination or inquired into his sanity and criminal responsibility at the time of the convicted offenses. [DE 75 at Page ID # 763-65]. However, he cites no facts that would tend to indicate that the trial court should have had "reasonable cause to believe that" Garland was then "suffering

from a mental disease or defect rendering him mentally incompetent to the extent that he [was] unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241. Garland therefore cannot show that a competency evaluation was warranted. Nor does he allege any facts that should have alerted his trial counsel to a competency issue or that would have justified pursuit of an insanity defense.

Rather, this brief claim simply recites unanalogous case law and does nothing to establish that Garland is entitled to § 2255 relief on any competency or sanity issue. The sole evidence referenced in support of perceived incompetence/insanity is Garland's "32 [years] of mental health history" and the fact that his Judgment included a condition that he participate in mental health treatment during supervised release. [DE 75 at Page ID # 764]. But the existence of mental health history alone is insufficient, and Garland has not presented any proof that would indicate that the trial court or his counsel was warranted in a reasonable belief that he was incompetent for trial purposes (or that he was incapable of bearing criminal responsibility at the time of the offense). The Court's sentencing determination concerning supervised release conditions is not persuasive evidence that the Court believed him to be incompetent, as the standards of consideration differ wildly. Further, Garland's numerous *pro se* filings in this proceeding and related to his bid for compassionate release tend to demonstrate that he fully understood the nature of the proceedings against him and the trial process. *See Hardy v. United States*, No. 1:06-CR-139-CLC-HBG, 2016 WL 554825, at *4 (E.D. Tenn. Feb. 10, 2016) (citing *United States v. Wilson*, 402 F. App'x 69, 75 (6th Cir. 2010), for the proposition that a petitioner's pro se pleadings may in part rebut a claim of incompetency). Garland cannot show that the trial court should have *sua sponte* ordered a competency evaluation or that his attorney performed deficiently by not seeking one or raising an insanity defense, where there is no evidence to support the same.

The Court therefore recommends denial of any competency-related claims Garland here raises. The Court further finds that no evidentiary hearing would be required on such conclusory, incredible claims because they are unsupported with specific facts or argument and are otherwise contradicted by the record.

Second, Garland baldly challenges the sufficiency of the evidence connecting him to the shed and the drug trafficking items and firearms found there, arguing that the Government failed to establish his constructive possession of the illicit materials. [DE 75 at Page ID # 771-73]. Garland did not raise this precise issue on appeal (where he directly challenged only the admission of the CI debriefing evidence). "The Sixth Circuit has repeatedly held the sufficiency of the evidence to support a conviction may not be collaterally reviewed during a § 2255 proceeding, as the issue of sufficiency of the evidence by which a defendant is convicted can be raised only by direct appeal." *Kendricks v. United States*, No. 101-CR-139, 2007 WL 308929, at *8 (E.D. Tenn. Jan. 26, 2007) (collecting cases). To excuse Garland's procedural default in this regard, he would have to show cause and prejudice, or actual innocence. *See Bousley*, 523 U.S. at 615. The record confirms that he can establish neither.

Regardless of prejudice, Garland does not allege any cause or reason for his failure to raise this issue on direct appeal. He does not argue that appellate counsel was ineffective for failing to raise the issue or that he somehow was prevented from raising it. Nor could he plausibly contend (and he does not attempt to) that he was unaware of the basis for this argument on direct appeal. Garland also does not argue or demonstrate that he is actually innocent of these offenses because he did not constructively possess the items. He provides no support for and does not develop such a claim. Moreover, in deciding the harmless nature of the debriefing evidence, the Sixth Circuit

repeatedly referenced the "overwhelming" evidence of Garland's constructive possession of the shed.  [*See* DE 65 at Page ID # 700-01].

Accordingly, no hearing is warranted on this likewise incredible and unsupported claim that is contrary to the other evidence and findings of record, and the Court recommends that the District Court deny it.

## IV.    <u>CERTIFICATE OF APPEALABILITY</u>

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473,484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255).  In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

In this case, reasonable jurists would not debate the denial of Garland's § 2255 motion as to any claim or conclude that any issue warrants further review.  *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Based on the full record, each claim either is contradicted by the record or is conclusory and largely incredible in nature.

First, reasonable jurists would not debate whether, on these facts, it would have been possible for an objectively reasonable, competent attorney to determine that a motion to suppress the evidence in the shed would fail and therefore to make a tactical decision not to file such a losing motion, as counsel here did. The denial of similar motions in other courts illustrates the questionable merits of the suppression issue here; even if a plausible suppression motion could have been filed, its merits were not so plain that every competent attorney would have elected to file such a motion. The Court therefore finds that Garland has not made a substantial showing of denial of effective assistance of counsel under the Sixth Amendment. The Court likewise finds that he has not made a substantial showing of ineffective assistance with respect to the CI recordings, as reasonable jurists could not disagree that the undisputed facts and applicable case law confirm that no valid suppression issue existed in that respect.

The Court also finds that Garland has not made a substantial showing that counsel was ineffective in failing to call defensive witnesses, including himself as Defendant. Reasonable jurists could not debate that Garland's speculative, conclusory claim fails to show prejudice in either facet, as Garland does not propose the substance of the missing testimony from him or any other unidentified witnesses. *See Herron v. Trierweiler*, No. 18-2353, 2019 WL 6445422, at *2 (6th Cir. July 10, 2019) ("Reasonable jurists would not debate whether the state court unreasonably determined that Herron's claim that his attorney failed to investigate and call witnesses on his behalf was meritless because he failed to prove what they would have said at trial."). Nor has Garland made a substantial showing that he was denied the right to testify or prevented from doing so, as his factual narrative and the record both demonstrate that he made a decision not to testify on counsel's advice and, later, simply regretted that choice.

24

Next, the Court finds that reasonable jurists could not debate the outcome of Garland's *Rehaif* argument, as it is clear that he did not raise it on appeal and that it is procedurally defaulted. Nor has he made any substantial showing of the denial of any constitutional right in this regard. As discussed at length, he has not plausibly shown or argued that no reasonable juror would have thought he knew he was a felon where he had previously spent nearly two years in prison on a drug trafficking charge and had been charged as a persistent felony offender.

Finally, the Court determines that reasonable jurists could not debate whether Garland's purported supplemental claims are both improperly asserted and unmeritorious. He has not made any substantial showing that he was incompetent to stand trial or that his attorney performed deficiently in failing to seek such an evaluation or pursue an insanity defense, as he has provided no facts that would indicate he was incompetent or that his criminal responsibility was in question. Garland also has not shown any constitutional error with regard to his sufficiency of the constructive possession evidence claim. Reasonable jurists could not debate that he procedurally defaulted this argument and that he has not attempted to show or actually shown cause for the default. Moreover, it is not debatable that Garland has not made any substantial showing of his innocence, as there is overwhelming evidence in the record that he possessed the items in the shed.

Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** as to all claims/issues upon the District Court's entry of its final order in this matter.

## V.   CONCLUSION

For the reasons stated in this decision, the Court **RECOMMENDS** that:

1) The District Court **DENY** with prejudice Defendant's § 2255 motion [DE 68 and, to the extent applicable, DE 75] as to all claims raised; and

2) The District Court **DENY** a certificate of appealability as to all issues, should Defendant seek one.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this the 6th day of June, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge